And I believe here that Mr. Adams is represented by Blair McCune. So that it probably will not waste too much of our time if the pictures have been brought by the government. You might let us have those now just put up here and we'll look at them to the extent we wish to. And then if we have questions, we can provide them to you. Thank you. Thank you for your consideration in bringing them to us. It solved our problem. Thank you. Go ahead. Mr. Schroeder, Madam Clerk, may it please the court. My name is Blair McCune and I represent the defendant appellant in this case, Cleveland Thor Adams. In the oral argument today, I would like to focus on the first point we raised in the appeal, the photographic lineup issue. I know the court's familiar with the facts of the case. Basically, just to review quickly, there was a strong circumstantial evidence that the man encountered by Jason Roth and his mother, The Roths picked my client out of a photographic lineup. So the lineup was key evidence in the case. And that's the issue we're bringing before the court. The most important point I would like to make in my oral argument today is that I believe there's been an ongoing change in the law regarding photographic lineups. There's a recent case, and I brought this case to Mr. Schroeder's attention yesterday, and I had just read this recently. It was by this court. It's called United States versus Jernigan. And it was an en banc decision that was filed on July 9th, 2007. Ordinarily, counsel, we'd like to have you send 27 J letters, even by e-mail, so we can read it before your argument. Would you please give some, write this citation down with three copies after your argument and give it to the clerk so we can read it? I shall, Your Honor. Basically, Jernigan, although it's not exactly on point, has included language on photographic lineups that I believe is important. It was a bank robbery in case involving several eyewitness identifications. The defendant was a short Hispanic female with a bad complexion. The government suppressed the fact that two additional bank robberies occurred after the defendant was taken into custody. And the robber in those cases was also described as a short Hispanic woman with a bad complexion. The en banc decision, despite the fact that there were five witnesses testifying to the identification of the defendant, this court found that a Brady violation had occurred. The violation was, as I remember reading the case, was the government should have told them about these other bank robberies so that they could use that as evidence that somebody else did it. To attack the identifications. Now, what's that have to do with looking at pictures? Some language in the Jernigan case I think is important. It talks about the nature of eyewitness identification generally. In my reply brief, I relied on the Department of Justice guide for eyewitness identification. And in Jernigan, that guide is cited as strong authority about the unreliability, the general unreliability of eyewitness identifications. And I believe that that's made a change in the law. That there's an ongoing change in the law to look at eyewitness identifications in a scientific manner, as the Department of Justice guide and subsequent manual does. Even with that in mind, though, your claim is that this photo array was impermissibly suggested. That's correct. Why? The position of my client in slot number one, I have a number of factors and I'll go over them. The police detective who composed the lineup said that that was a random placement. We disagree. Putting it prominently in slot number one is a fair lineup, would have placed it somewhere in the middle. Suppose they put it as number two. No argument? Is your rule that it can never be number one or it's suggestive? If it was a truly random placement, that would be one thing. But it wasn't a random placement. To my way of thinking, because of the background of the photograph, it tended to stick out a lot. William, you've left the question. The question is it's number one. And you said it's not random because it's number one. Random necessarily means periodically it's going to be number one. Is your argument that random means everything except number one? No, no. I think that random means a process and a random process wasn't done in selecting the placement. It was placed in number one. And that's one factor. How do you know that? The detective said that he kind of chose number one as a random selection. To me, that isn't a random choice. He used the word randomly. And you say that proves he's doing it deliberately. I don't quite follow you. Yeah, I think that a random choice would be a choice that was done by some outside factor. But maybe I'll go on to the other factors, which I think are more important. The background in the photograph is distinctly different in Mr. Mr. Adams photograph. The reason is set out in the briefing. Basically, the Division of Motor Vehicles had gone to a digital system. And if you look at the photograph, it's a digital-type photograph, rather than the more washed-out copies of old photographs that were taken with an analog camera, I believe a Polaroid-type camera. There's also the State of Alaska seal is included in the other photographs, not included in Mr. Adams' photograph. But the most important part is the lightness of the skin. We believe, Mr. Roth, I want to point out, as I did in the reply brief, the testimony that Jason Roth made at his grand jury, at the grand jury. Let me just ask a question. Are you saying that the picture that was used was lighter than the others or darker than the others? I believe that the picture shows that Mr. Adams is a lighter-skinned person. That was the description that was in the newspaper. Well, no, I don't think I've asked my question correctly. Is your objection that the other pictures are too dark or too light? The other pictures are too dark. Are too dark. Number two is lighter than number one. Well, I think what's important is not necessarily what we would observe, but what the witness felt. And we added, the defense attorney below included a statement by the witness that was given to the grand jury. And I think that's important. The prosecutor asked, were the photos similar to one another, the six photos? And this was questioning of Mr. Jason Roth. Light-skinned, black male, whatever, Mr. Jason Roth answered. There was, I think, a couple of other, maybe one other light-skinned and a couple of darker-skinned. So the description that the police gave and put in the paper that he read was of a light-skinned black male. I mean, I think we can have different opinions looking at the photograph, but what Mr. Roth saw that popped out there was a light-skinned African-American male. So those are the main factors that we believe caused this case to be, caused this photograph to be impermissibly suggested. Even if it's impermissibly suggested, when you get to trial, they identify him in court. They make an in-court identification. And so we know under Biggers that that can be permissible if the Biggers test factors are satisfied. And, you know, they had sufficient opportunity to look him in the face, because it was a direct encounter between the mother and the son, the mother and the son. Once again, we believe that the newspaper article played a serious role in this. And then another factor also was that the police detective, he testified at the evidentiary hearing that after Mr. Roth picked out Mr. Adams' photograph, the police detective said something to the effect of, yes, you got the right person. So that really affects the subsequent in-court identification. And as far as the accuracy of the identification, I believe that the record shows that Mr. Roth said he was fairly certain. And we have to agree that the encounter was, you know, not a 30-second encounter. It was over several minutes. I mean, I think that's the strongest factor. I see I'm running out of time. I'll give you a minute for rebuttal. Thank you very much, Your Honor. Thank you. Your Honor, may it please the Court, I'm Brian Schroeder, assistant United States attorney from the District of Alaska. I will address, in the interest of the Court, I will address some of the issues that were brought up by counsel. First, the Jernigan case, which the Court hasn't had a chance to read, but I think I would disagree with counsel's assertion that that signals some kind of a change in the law. The issue in the Jernigan case was a Brady violation, not the eyewitness testimony matters. The Court certainly indicated they had some concerns about eyewitness testimony, but I think at best that's dicta. And the current precedent is that eyewitness testimony, as long as it meets the criteria under the existing case law, is acceptable. The other factor about Jernigan is I think it's factually distinguishable. Jernigan was a case, the Court will get a chance to read, was a bank robbery with eyewitness testimony where eyewitness testimony was the only evidence in the case. So I think the Court may have some better reason to be concerned. There was no other physical evidence, no corroborating evidence. And this case is different. We have corroborating evidence, mainly what is believed to be, what the jury certainly, I think, believed to be the getaway car, which contained some of the clothing that appeared to be wore by the robber and some of the money taken by the robber. So I think we have some strong evidence other than the eyewitness testimony in this case. Counsel cited the DOJ guide. The DOJ guide is just a guide. It's not even policy. It says specifically in the document it's not the policy of the department. It's a document that is supposed to help police officers do their job better. The fact that they might have used some of the tips in the guide or not used some of the tips in the guide does not make, does not mean it met or did not meet legal precedent. Just about the placement issue, Your Honor, the Court hit on what the key point I would make is that the photo's got to go somewhere, and it's got to go in the slot number one at some point, or you only have five slots. I would also bring to the Court's attention a case cited by the defense, U.S. v. Bordeaux, where the defendant argued in that case that the fact that he was placed in the middle slot was too suggestive. So we can only eliminate so many slots. I think all the slots need to be available so it can be a fair test. Counsel talks about the lightness, different issues with the background or the lightness of the skin. The government, I think, courts now had a chance to look at the original lineup. The district court in the evidentiary hearing had a chance to look at the original lineup and look at the witness, and the district court came to the conclusion that nothing in those photos makes any one stand out. The court found it was a fair array of similar-looking men, and nothing in the background makes it stand out. And as we said in our brief, defense would argue that we need to be almost a nearly perfect standard, but that's not what the precedent is. The precedent says they have to be fairly similar, photographed in a fairly similar way, and the government argued that we've met that. This lineup clearly meets that requirement. Counsel also talked about Mr. Roth and cited some grand jury testimony that seems to indicate he was focused on the skin tone. The defendant, the government would argue that Mr. Roth was not focused on skin tone for any reason. He only answered the question about skin tone in a response to a question about skin tone. So he only mentioned it, and if you read the language, the defendant actually says, well, I think there were a couple lighter skin, darker skin. He wasn't focused on skin tone. He was focused on somebody he saw for a considerable length of time in a circumstance that was very unusual, and if you could just walk down the bigger factors, that's why he identified this person. I would also add to the court, too, he identified that the man had tattoos, something not visible in the photo, but something Mr. Roth identified at trial with the defendant, and the defendant actually showed the tattoos. So if there are no other questions from the court, the government would rely on our briefs for the remaining issues. Any rebuttal? No, I don't. We don't. There are no questions. Thank you, sir. Thank you. The matter will be submitted, and we appreciate you being here. I'm sorry. I don't want to take up much more time. Just briefly, the bigger factors, I've set those out on page 27, 28, and 29 of the brief, and I'd ask the court to look at those considering the case. I have no further argument and request a reversal, Your Honor. Thank you. The matter will be submitted. We appreciate your argument.
judges: Wallace, Noonan, Paez